NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| CHRISTIAN ROMERO MONTERO, individually and on behalf of all other persons similarly situated who were employed by J.A. ALEXANDER, INC., WEST ESSEX CONSTRUCTION INC., MARIA REBIMBAS, individually, and JOSEPH DOMINICK REBIMBAS, individually, <br><br> Plaintiff, <br><br> v. <br><br> J.A. ALEXANDER, INC., WEST ESSEX CONSTRUCTION INC., MARIA REBIMBAS, individually, and JOSEPH DOMINICK REBIMBAS, individually, <br><br> Defendants. | Civil Action No. 23-21679 (SRC) <br><br> **OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court on the motion by Plaintiff Christian Romero Montero ("Named Plaintiff" or "Montero") for conditional certification of his Fair Labor Standards Act ("FLSA") claim as a collective action, pursuant to 29 U.S.C. § 216(b). (ECF No. 19). Defendants oppose the motion. The Court has reviewed the papers and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court shall **GRANT** the motion. The Court will permit that the proposed Notice of Lawsuit be disseminated to all non-union concrete and asphalt laborers who have worked for Defendants JA Alexander, West Essex, Maria Rebimbas, and/or Joseph Dominick Rebimbas at any point from

1

October 31, 2020, through the present and continuing, subject to the modifications outlined in Part II.3 of this Opinion and in a manner otherwise consistent with the following discussion.

I. **BACKGROUND**

This action seeks to recover uncompensated wages on behalf of Named Plaintiff and a putative class of similarly situated asphalt and concrete laborers currently and formerly employed by Defendants. In addition to the FLSA, Plaintiffs bring claims under the New Jersey State Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.*, New Jersey State Wage Payment Law, N.J.S.A. 34:11-4.1, and the New Jersey Prevailing Wage Act, N.J.S.A. 34:11-56.25 *et seq.* Am. Compl. at ¶¶ 1-3.

The Amended Complaint contains the following allegations. Defendants JA Alexander, Inc. ("JA Alexander") and West Essex Construction, Inc. ("West Essex") are construction companies headquartered in New Jersey. Id. at ¶¶ 16, 20. Individual Defendants Maria Rebimbas and Joseph Dominick Rebimbas are owners, partners, officers, or managers of JA Alexander and West Essex, with control over those entities' day-to-day operations including pay practices. Id. at ¶¶ 24-30. Named Plaintiff "performed non-exempt asphalt and concrete and other construction labor duties for the Defendants." Id. at ¶ 7. Montero's claims are "typical of the claims of the putative class," as "Defendants uniformly applied the same employment policies, practices, and procedures to all asphalt and concrete and associated construction laborers who work or worked at the Defendants' jobsites." Id. at ¶¶ 37, 39. Montero and all other "similarly situated employees" started each workday at the yard owned and operated by JA Alexander, worked on trucks emblazoned with JA Alexander's name, "were supervised by the same person on all jobs for both" JA Alexander and West Essex, and had their hours documented "the same way on all jobs." Id. at ¶¶ 49-53. However, Montero and other employees' paychecks "sometimes" bore West Essex's name. Id. at ¶ 54. Thus, Montero submits that JA Alexander and West Essex "jointly decide the

terms and conditions of employment for the Named Plaintiff and all other similarly situated employees of Defendants." Id. at ¶ 55.

The declarations attached to Plaintiffs' moving papers largely mirror the allegations presented in the Amended Complaint. Montero worked for Defendants between "approximately September 2019, through in or about June 2023, as a non-exempt concrete laborer."[1] Declaration of Christian Romero Montero ("Montero Decl. I") at ¶ 2. Montero was paid $25 per hour and "usually worked five [] days each week," amounting to "approximately fifty [] hours," but did not receive time-and-one-half for those hours in excess of forty. Id. at ¶¶ 5-8. Montero's hours were documented by either his supervisor or the group's foreman; Montero "was not required to clock in and out for any part of the workday." Id. at ¶¶ 9-11. Montero "regularly spoke" with other concrete laborers employed by Defendants—laborers working similar hours, with similar duties, and subject to the same time-keeping methods—about the "pay practices of Defendants." Id. at ¶¶ 12-13. Opt-in Plaintiff Paul Fernandez Lopez Hugo ("Hugo") provides a declaration nearly identical to Montero's, with minor differences in dates worked (2018 through about June 2020) and weekly hours ("fifty to sixty"). See Declaration of Paul Fernandez Lopez Hugo ("Hugo Decl.") at ¶¶ 2-12. Hugo identifies "Dario" as the supervisor who logged the concrete laborers' hours worked. Id. at ¶ 13. The declaration of the remaining opt-in Plaintiff, Alino Angel Mercado ("Mercado"), is distinguishable from Montero's only with regard to pay rate ($22 per hour), and dates worked (2018 through around June 2020). See Declaration of Alino Angel Mercado ("Mercado Decl.") at ¶¶ 2-15.

---

[1] The parties' submissions refer at various points to Named Plaintiff and the proposed collective group of plaintiffs as "asphalt and concrete laborers," or merely "concrete laborers." See Am Compl. at ¶ 1; Montero Decl. I at ¶ 1. Named Plaintiff and the two opt-in Plaintiffs clarify that the position of "concrete laborer" includes, but is not limited to, "asphalt and concrete work." See, e.g., Montero Decl. I at ¶ 3. This Opinion uses the two descriptions interchangeably.

In Montero's second declaration, submitted with his reply brief, he specifies that, during his employment, "every day all concrete laborers started the day at the [JA Alexander] yard at about the same time," "returned from the work site to the [JA Alexander] yard at about the same time," and had their hours documented by "Dario." Declaration of Christian Romero Montero ("Montero Decl. II") at ¶¶ 6-7, 9-15. Montero and all other concrete laborers worked at one jobsite at a time; "there were never 2 jobs going on at the same time." Id. at ¶¶ 35-36. Dario was Montero's supervisor throughout Montero's tenure working for Defendants; Dario's predecessor was an individual named "Diaz." Id. at ¶ 27. Montero "spoke with other concrete workers that worked for Diaz" and learned that they too "were required to work more than forty [] hours each week, and were improperly paid for overtime." Id. at ¶ 29. Montero worked alongside Hugo and Mercado; Hugo and Mercado discussed with Montero the fact that they were not being paid time-and-one-half for their weekly hours over forty. Id. at ¶¶ 37-45. Montero specifically names one other coworker he spoke with concerning Defendants' overtime pay practices: Jeremy Rodriguez Vega[2] ("Vega"). Id. at ¶ 47. Vega likewise confirmed he was not being compensated properly for overtime hours. Id. at ¶¶ 47-51. Montero "spoke with a lot of concrete laborers" about their shared grievances concerning Defendants' pay practices but is unable to provide details as those persons "are afraid to come forward right now." Id. at ¶¶ 52-53.

## II. Discussion

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." Genesis Healthcare v. Symczyk, 569 U.S. 66, 69 (2013). The statute mandates that employers pay employees for all hours worked, including a time-and-one-

---

[2] Montero submits that Vega worked for Defendants from November 2017 until December 2020, and then again between April 2022 and July 2022. On August 22, 2024, Vega filed notice of his consent to join this action. (ECF No. 35).

4

half overtime premium for hours worked over forty in one week. 29 U.S.C. §§ 206-207. The FLSA provides a collective action[3] mechanism, a form of group litigation which allows an employee plaintiff to file suit "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In order to become party plaintiffs to an FLSA collective action lawsuit, such similarly situated employees must affirmatively "opt in" by filing express, written consents. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Unlike a Rule 23 action, in which certification produces a class with an independent legal status, in an FLSA collective action "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees who in turn become parties to a collective action only by filing written consent with the court." Genesis Healthcare, 569 U.S. at 75 (internal citation omitted); see also Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012) (explaining that conditional certification of an FLSA collective action is "not really certification" but instead an exercise of the court's discretionary authority "to facilitate the sending of notice to potential class members."). Whether to grant conditional certification to an FLSA collective action is left to the district court's discretion and—in the Third Circuit—requires a two-step process. Zavala, 691 F.3d at 536; In re Citizens Bank, N.A., 15 F.4th 607, 611 (3d Cir. 2021). At the conditional certification stage, the court makes a preliminary determination concerning whether the employees identified in the collective group are sufficiently similarly situated to the named

---

[3] While a collective action under Section 216(b) of the FLSA shares representational characteristics with class actions brought pursuant to Federal Rule of Civil Procedure 23, the two are "fundamentally different." Genesis Healthcare v. Symczyk, 569 U.S. 66, 74 (2013). Nevertheless, courts dealing with FLSA collective actions have borrowed terminology from Rule 23 jurisprudence, for example, referring to the group of initially unnamed employees who are purportedly "similarly situated" to the named plaintiff as a "class." See Halle v. West Penn. Allegheny Health Sys. Inc., 842 F.3d 215, 223 (3d Cir. 2016).

plaintiff. Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 192 (3d Cir. 2011), rev'd on other grounds, 569 U.S. 66 (2013).

The standard at the conditional certification stage is "fairly lenient," Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 497 (D.N.J. 2000), and courts generally "make this determination by examining the pleadings and affidavits in support or opposition to the proposed collective action." Robles v. Vornado Realty Tr., No. 15-1406, 2015 WL 5012597, at *2 (D.N.J. Aug. 21, 2015) (citation omitted). To obtain conditional certification, the movant bears the burden of making a "modest factual showing" that the plaintiff and the individuals in the proposed collective group are similarly situated. Symczyk, 656 F.3d at 192. A "modest factual showing" means that "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy [or practice] affected her and the manner in which it affected other employees." Id. at 193 (quoting Smith v. Sovereign Bancorp., Inc., No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003)); see also Zavala, 691 F.3d at 538 ("Being similarly situated ... means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."). Elaborating on this standard, the Third Circuit has approvingly quoted the Second Circuit's description of conditional certification "as 'determin[ing] *whether* 'similarly situated' plaintiffs do in fact exist,' while at the second stage, the District Court determines 'whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiff.'" Zavala, 691 F.3d at 536 n.4 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)) (emphasis in original). Courts evaluating whether employees are "similarly situated" typically look at "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and

circumstances of employment." Pearsall-Dineen v. Freedom Mortg. Corp., 27 F. Supp. 3d 567, 570 (D.N.J. 2014) (quoting Zavala, 691 F.3d at 536-37).

### 1. Defendants' Preliminary Arguments

Certain of Defendants' arguments are properly addressed at the outset of the Court's analysis. First, Defendants argue that Montero, Hugo, and Mercado's declarations "misstate the terms of the proposed class members' employment," as Montero, Hugo, and Mercado were non-union workers employed by West Essex, not JA Alexander. Def. Opp. Br. at 15; see Certification of Maria Rebimbas at ¶¶ 10-16 ("Since its formation in 2013, [West Essex's] employees have been non-union employees."); Certification of Joseph Dominick Rebimbas at ¶¶ 11-19 ("JA [Alexander] employs no non-union laborers or operators."). Thus, Defendants contend the instant motion should be denied because Plaintiffs cannot show the putative class was subjected to a *common* employer practice or policy. However, "the fact that the defendants are separate employers is not dispositive" at the conditional certification stage; indeed, the Amended Complaint alleges JA Alexander and West Essex are joint employers, and Plaintiffs' declarations provide significant information as to how these entities are interrelated, creating an issue properly reserved for later resolution. See Ruffin v. Avis Budget Car Rental, LLC, No. 11-01069, 2012 WL 2514841, at *5 (D.N.J. June 28, 2012). Separate but relatedly, the Court notes Plaintiffs do not oppose Defendants' request[4] to limit the class to non-union workers and shall grant that request accordingly.

Second, Defendants urge the Court to deny the instant motion based on the assertions in the opening brief and declarations that "landscape laborers," of which Defendants employ none,

---

[4] Defendants specifically ask that the class be limited to non-union West Essex employees. Nevertheless, given that a decision as to whether West Essex and JA Alexander were joint employers is reserved for decision at a later date, the Court broadens Defendants' request to include non-union employees of either employer.

should be included in the putative class and receive notice of this lawsuit. Because Plaintiffs concede the references to "landscape laborers" were included erroneously, this error—although deeply concerning to the Court—is irrelevant to determining whether similarly situated employees do in fact exist. See Zavala, 691 F.3d at 536 n.4.

### 2. Plaintiffs' Demonstration of the "Similarly Situated" Standard

Turning now to the core of the analysis—whether Plaintiffs have carried their burden to demonstrate a factual nexus between how Defendants' timekeeping and pay practices affected them and the manner in which those practices affected other employees—the Court examines the allegations in the Amended Complaint, Montero's declarations, and Hugo and Mercado's declarations.[5] Plaintiffs seek conditional certification of a putative class including "all individuals who have worked as asphalt and concrete laborers for Defendants, at any time from October 31, 2020, through the present and continuing." Pl. Opening Br. at 11. If this Court were limited to just the statements in Montero, Hugo, and Mercado's opening declarations, it would have to agree with Defendants that "[t]here are no specifics offered … to suggest that all four employers paid all employees proposed for inclusion in the class the same way." See Def. Opp. Br. at 23. As concerns

---

[5] Defendants certify that Hugo and Mercado ended their employment with West Essex on May 1, 2020 and May 29, 2020, respectively. Certification of Maria Rebimbas at ¶¶ 14, 16. On April 22, 2024 Hugo and Mercado filed notices of consent to join this action. (ECF Nos. 11-12). Consequently, Defendants argue, even assuming that Plaintiffs are ultimately able to prove willful FLSA violations by Defendants and a three-year statute of limitations is triggered, Hugo and Mercado's claims would be time-barred pursuant to 29 U.S.C. §§ 255-256 and 29 C.F.R. § 790.21(b). Plaintiffs respond with caselaw supporting the proposition that, at the conditional certification stage, courts may presume a three-year statute of limitations. See Arroyo v. Aspen Constr. Servs., Inc., No. 19-5317, 2020 WL 4382009, at *4 (E.D. Pa. July 31, 2020). But even with a three-year statute of limitations, it would indeed appear that Mercado and Hugo's claims are untimely, having been brought well over three years after their employment concluded.

Nonetheless, Defendants have not filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Mercado and Hugo from this action. Absent such a motion, the Court is satisfied that it may consider the declarations of both Hugo and Mercado in evaluating whether Plaintiffs have made a modest factual showing that they and the employees in the proposed collective group are similarly situated. See Joyce v. Colter Energy Servs. USA, Inc., No. 2:22CV1367, 2024 WL 2794278, at *5 (W.D. Pa. May 31, 2024) ("[D]eterminations about whether the statute of limitations or equitable tolling apply to any opt-in member's claims are merits-based matters that are not appropriate at this preliminary stage of the certification process.") (citation omitted).

the proposed class, the opening declarations consist of no more than broad, conclusory statements that "[t]here were several groups of non-exempt concrete laborers that worked approximately the same hours as me[,] [] were paid the same way, [and] their time was kept in the same manner." Montero Decl. I at ¶ 11; Hugo Decl. at ¶ 11; Mercado Decl. at ¶ 12. While Montero, Hugo, and Mercado add that they each "regularly spoke" with the other concrete laborers about Defendants' pay practices and observed those persons working similar hours and being paid, they do not proffer any details whatsoever about those observations or conversations. Most glaringly, these declarations do not explain the basis for Plaintiffs' knowledge—for example, how Montero, Hugo, and Mercado were in a position to speak with other employees and observe their work patterns. Such generalized assertions provide no factual "basis for inferring that the potential members are similarly situated." See Armstrong v. Weichert Realtors, No. 05-3120, 2006 WL 1455781, at *1 (D.N.J. May 19, 2006) ("Conspicuously absent from the declaration is any specific statement about even one particular loan officer known to Armstrong as having been required to perform unpaid overtime work.").

In contrast, Montero's second declaration explains the foundation for his knowledge that he and the other concrete laborers were subject to the same timekeeping and overtime pay practices. Specifically, Montero's statements that all concrete laborers worked at one jobsite at a time and started and ended their workdays at the same location, at around the same time, lends some credence to his contention that all of Defendants' concrete laborers worked similar weekly hours and had similar duties. Montero names Dario as the concrete laborers' supervisor and sole person responsible for documenting everyone's hours, which is consistent with Hugo's declaration and explains the factual basis for Plaintiffs' assertion that all concrete laborers were subject to the same timekeeping practices. Because Montero's second declaration clarifies that he worked

9

alongside Hugo and Mercado and that they discussed their belief that they were not being properly compensated for overtime hours, Montero has laid the groundwork to support the statements that he, Hugo, and Mercado[6] did indeed speak to other concrete laborers about Defendants' pay practices. Moreover, Montero certifies that Vega, a former coworker and concrete laborer for Defendants, told Montero he was not being properly compensated for overtime hours. The Court finds that Plaintiffs have made a modest factual showing of a nexus between themselves and the proposed collective group of non-union concrete laborers and, therefore, have satisfied the standard for conditional certification of this limited class under FLSA Section 216(b). The Court thus approves that notice of this suit may be distributed to a class consisting of all non-union concrete and asphalt laborers who have worked for Defendants JA Alexander, West Essex, Maria Rebimbas, and/or Joseph Dominick Rebimbas at any point from October 31, 2020, through the present and continuing.

### 3. Form of the Proposed Notice of Lawsuit

Plaintiffs have submitted a proposed Notice of Lawsuit ("Notice") with the instant motion; Defendants raise a number of objections to language used therein. Plaintiffs, in response, request this Court permit the parties to meet and confer in an effort to agree on the form of the Notice. Defendants raise the following objections: (1) Defendants object to the portions of the Notice that reference JA Alexander but not West Essex or the individual defendants; (2) the Notice's description of the lawsuit improperly includes references to Plaintiffs' New Jersey Prevailing Wage Act claim; and (3) the Notice should be issued only to non-union asphalt and concrete laborers employed by West Essex.

---

[6] The Court notes Defendants' argument that the slight differences in pay and weekly hours between Montero, Hugo, and Mercado "render collective treatment inappropriate." Def. Opp. Br. at 22. Such differences, however, are too minor to significantly influence the Court's analysis at this preliminary stage.

As to Defendants' third argument, this Court has already found it cannot sever JA Alexander from the lawsuit at this juncture. The same is true of the individual defendants, Maria and Joseph Dominick Rebimbas; the FLSA provides for individual liability where "the individual has exerted sufficient control over significant aspects of the employer's employment policies." Davis v. Abington Mem'l Hosp., 817 F. Supp. 2d 556, 565 n.48 (E.D. Pa. 2011) (citation omitted); see 29 U.S.C. § 203(d). In addressing Defendants' remaining arguments, the Court notes "district courts may 'regulate their practice [of facilitating notice] in any manner not inconsistent with federal or local rules.'" Pearsall-Dineen, 27 F. Supp. 3d at 574 (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989)). The Court agrees with Defendants that accuracy demands the Notice include and reference *all* Defendants by name; therefore, any and all mentions of JA Alexander in the Notice must be expanded to include West Essex, Maria Rebimbas, and Joseph Dominick Rebimbas. To illustrate, "[t]his lawsuit … is about whether JA Alexander should have paid concrete and asphalt laborers overtime wages," must be rewritten as "this lawsuit … is about whether JA Alexander, West Essex, Maria Rebimbas, and/or Joseph Dominick Rebimbas should have paid concrete and asphalt laborers overtime wages." See Proposed Notice of Lawsuit at ¶ 2. Lastly, the Court concurs with Defendants that the reference in the Notice to Plaintiffs' New Jersey Prevailing Wage Act claim must be eliminated. The instant motion seeks conditional certification pursuant to the FLSA's collective action mechanism, 29 U.S.C. § 216(b). Any state law claims are beyond the scope of the Notice, and referencing same may cause recipients needless confusion. See Hoffmann-La Roche, 493 U.S. at 171 (explaining that courts should "monitor[] preparation and distribution of the notice" to "ensure that it is timely, accurate, and informative"); see also Ingram v. Coach USA, Inc., No. 06-3425, 2008 WL 281224, at *8 (D.N.J. Jan. 28, 2008) ("First,

11

the notice serves as a means to identify those who believe that they have been injured by the defendants' overtime policy and to give them a forum to pursue their potential claims.").

Accordingly, subject to the modifications discussed above, the Court approves the Notice submitted by Plaintiffs. As the accompanying Order will direct, Plaintiffs must serve a further revised version of the Notice on Defendants, and Defendants will be given an opportunity to express any objections before the Notice may be distributed.

As for the method of disseminating the Notice, the Court shall allow Plaintiffs to send the Notice via first-class mail and email and shall further permit prospective plaintiffs to submit their consent to join forms electronically. The Court further grants Plaintiffs' request that Defendants produce the names, last known mailing addresses, last known telephone numbers, and last known email addresses (work and personal), for all prospective collective group members. See Essex v. Children's Place, Inc., No. 15-5621, 2016 WL 4435675, at *7 (D.N.J. Aug. 16, 2016). Defendants shall transmit the foregoing information to Plaintiffs in a computer-readable data file. See Pearsall-Dineen, 27 F. Supp. 3d at 573 n.5 (ordering that contact information be provided in electronic format). The Court denies Plaintiffs' request to send a reminder notice, as Plaintiffs cite cases in which other courts have allowed for reminder notices but make no arguments addressing why, in this particular action, an initial notice mailed and emailed to potential collective group members would be insufficient to advise them of this lawsuit and their opportunity to opt in. See Clarke v. Flik Int'l Corp., No. 17-1915, 2018 WL 3930091, at *9 (D.N.J. Aug. 16, 2018).

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification and to issue notice of this lawsuit to the proposed collective group of non-union concrete and asphalt laborers shall

be **GRANTED**. The Notice of Lawsuit shall be modified as outlined above in Part II.3 of this Opinion. A conforming Order follows.

***

**THEREFORE**, for the reasons stated in the accompanying Opinion, and good cause appearing: **IT IS** on this 23rd day of August, 2024, **ORDERED**, as follows:

1. Plaintiffs' motion for conditional certification (ECF No. 19) is **GRANTED**;

2. Upon modification conforming to the Court's rulings in the accompanying Opinion, the proposed Notice of Lawsuit shall be served by Plaintiffs on Defendants within ten (10) days of this Order;

3. Within seven (7) days of receiving the revised Notice, Defendants shall notify the Court of any further objections they may have; and

4. Once any further objections to the Notice are resolved, Defendants shall transmit to Plaintiffs in an electronic, computer-readable format, the names, last known mailing addresses, last known telephone numbers, and last known email addresses (work and personal), for all prospective collective group members;

5. Plaintiffs shall distribute the Notice of Lawsuit and Consent to Join form to the collective group of non-union concrete and asphalt laborers via first-class mail and email, and prospective plaintiffs may submit their consent to join forms electronically; and

6. Plaintiffs' request to send reminder notices is denied.

/s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge